UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| SHEILA ALFORD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-cv-1817 (KBJ) |
| PROVIDENCE HOSPITAL, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This is the second action that Plaintiff Sheila Alford ("Plaintiff" or "Alford"), a paraplegic who requires the use of a wheelchair, has filed against her former employer, Defendant Providence Hospital ("Defendant" or "Providence"), challenging the termination of her employment as an office worker at Providence Hospital. Alford filed the instant complaint on November 20, 2013, alleging that her termination on January 7, 2011, and also Defendant's alleged refusal to provide a reasonable accommodation for her disability, violated her rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117 (2014). (Amended Compl. ("Compl."), ECF No. 3, ¶¶ 37-51.) In the prior action, which was filed in this district in November of 2011, Alford argued that this same termination violated her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a) (2014), and its local counterpart, the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-507 (2014), but the court concluded that Providence had terminated Alford for a legitimate reason and therefore granted summary judgment in Defendant's favor. *See Alford v. Providence Hosp.* ("*Alford I*"), 945 F. Supp. 2d 98, 108 (D.D.C. 2013), *aff'd*,

1

No. 13-7096, 2014 WL 3013741 (D.C. Cir. June 20, 2014).

Presently before this Court is Defendant's motion to dismiss for failure to state a claim upon which relief can be granted, in which Providence argues that res judicata bars consideration of Alford's complaint. (*See* Def.'s Mot. To Dismiss ("Def.'s Mot."), ECF No. 8.) This Court concludes that, because Alford could have brought the instant ADA claims in her prior lawsuit, the doctrine of res judicata precludes her from bringing them now. Accordingly, this Court will **GRANT** Defendant's motion to dismiss. A separate order consistent with this opinion will follow.

I. BACKGROUND

A. Facts

This is the second case that Alford has filed against Providence alleging that her termination and related events constituted employment discrimination. *See Alford I*, 945 F. Supp. 2d at 98-111.[1] Most of the relevant facts have already been detailed at length in *Alford I*, *see id.* at 101-03, so this Court will not reiterate them here in their entirety. For the purposes of the instant decision, however, a brief summary follows.

Alford worked as a secretary at Providence Hospital from July of 1983 until her termination on January 7, 2011. (Compl. ¶¶ 2, 25.) Since 1991, she has been a paraplegic and, as a result, has needed to use a wheelchair. (*Id.* ¶ 2.) From August of 2009 through March of 2010, Alford took unpaid leave to recover from an injury to her hand that she suffered at work. *Alford I*, 945 F. Supp. 2d at 101; *see also* Amended

---

[1] While this is Alford's second action against Providence arising out of her termination, it is actually her third lawsuit against this defendant: in 2007, while Alford was still a Providence employee, she filed suit alleging that Defendant had violated her rights under the ADA when it did not select her for a position to which she had applied. *See Alford v. Providence Hosp.*, 791 F. Supp. 2d 168, 169 (D.D.C. 2011). The court granted summary judgment for Defendant in this non-selection action on June 14, 2011. *Id.* at 175.

2

Compl. ("*Alford I* Compl."), *Alford I*, No. 11-02121 (D.D.C. Oct. 25, 2012), ECF No. 20. On April 2, 2010, just days after her return to the office, Alford injured her shoulder, head, and neck at work. *Alford I*, 945 F. Supp. 2d at 101. She took additional leave to recover from this second injury before returning to work once again on May 7, 2010. *Id.* at 101-02 & n.1.

Months later, on December 3, 2010, Alford went to the emergency room after reporting shoulder pain in the same shoulder that she had injured in April. *See id.* at 102. On December 7, Alford saw her doctor and requested further leave until December 14 even though that doctor had approved her to return to work on the condition that she not lift anything over ten pounds. *Id.* Between December 15, 2010, and January 7, 2011, Alford visited that same doctor and several others who all approved her to return to work subject to similar weight-lifting restrictions. *Id*. at 102-03. Notably, these weight-lifting restrictions prohibited Alford from lifting her 48-pound wheelchair. *Id.* at 102. Providence determined that Alford could not load her wheelchair into and out of her car, which made it difficult for her to get to work. *Id.* at 103. Because there was an "operational need" to fill her position, Providence terminated Alford effective January 7, 2011. *Id.* Alford alleges that she repeatedly contacted Providence to try to return to work in late December of 2010 and throughout January of 2011, but that Providence did not answer her inquiries until it notified her of her termination on January 25, 2011. (Compl. ¶¶ 19, 20, 24-26, 29.)

### B. Procedural History

Following her termination, Alford filed two different complaints. On June 19, 2011, Alford filed an administrative complaint with the Equal Employment Opportunity

Commission ("EEOC"), alleging that her termination and associated events constituted disability discrimination in violation of the ADA. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 9, at 2; EEOC Charge of Discrimination ("Charge of Discrimination"), Ex. A to Def.'s Mot., ECF No. 8-2, at 1.)[2] Months later, on November 8, 2011, Plaintiff filed the *Alford I* complaint, contending that the very same termination and related events violated her rights under the FMLA and the DCFMLA and gave rise to tort liability under D.C. law. (*See* Pl.'s Opp'n. at 2.) *See also Alford I*, 945 F. Supp. 2d at 103.[3]

On March 29, 2013, while *Alford I* was still pending in the district court, the EEOC issued a Letter of Determination in Plaintiff's administrative ADA case, finding reasonable cause to believe that Providence had discriminated against her on the basis of her disability when it failed to provide her with a reasonable accommodation and instead terminated her. (Compl. ¶¶ 31-33; EEOC Letter of Determination ("Letter of Determination"), Ex. 2 to Pl.'s Opp'n, ECF No. 10-4.) On April 18, 2013, the EEOC began an attempt to resolve the dispute through out-of-court conciliation between Alford and Providence. (Compl. ¶ 35; *see also* EEOC Proposed Conciliation Letter ("EEOC Conciliation Letter"), Ex. 3 to Pl.'s Opp'n, ECF No. 10-3.)[4] Meanwhile, on

---

[2] Page numbers throughout refer to those automatically assigned by the Court's electronic filing system.

[3] Specifically, in *Alford I* Plaintiff brought five counts alleging that Providence: (1) interfered with her FMLA rights in violation of 29 U.S.C. § 2612(a)(1); (2) interfered with her DCFMLA rights in violation of D.C. Code § 32-507(a); (3) unlawfully retaliated against her in violation of her rights under both the FMLA, 29 U.S.C. § 2615(a)(2), and the DCFMLA, D.C. Code § 32-507(b)(1); (4) committed tortious intentional misrepresentation in violation of D.C. law; and (5) committed negligent misrepresentation in violation of D.C. law. *Alford I*, 945 F. Supp. 2d at 104-05, 108-10. Plaintiff initially filed *Alford I* in D.C. Superior Court, but Providence removed the case to D.C. District Court. *See* Notice of Removal, *Alford I*, No. 11-2121, (Nov. 29, 2011), ECF No. 1.

[4] Conciliation is an informal procedure in which an EEOC investigator works with the claimant and the employer to fashion an appropriate remedy. *See* Resolving a Charge, U.S. Equal Employment Opportunity Comm'n, *available at* www.eeoc.gov/employers/resolving.cfm (last visited July 25, 2014).

May 23, 2013, the *Alford I* court granted summary judgment in favor of Defendant. *See Alford I*, 945 F. Supp. 2d at 111.

Alford alleges that, on August 20, 2013—several months after resolution of the FMLA and DCFMLA claims in *Alford I*—the EEOC finally determined that its efforts to conciliate Plaintiff's ADA complaint were unsuccessful and issued a right-to-sue notice. (Compl. ¶ 36.)[5] Alford then filed the instant ADA complaint in federal court in November of 2013.[6] Defendant moved to dismiss on February 10, 2014. (*See* Def.'s Mot. at 1.) The motion is now fully briefed and ripe for consideration.

## II. LEGAL STANDARD

### A. Standard For A 12(b)(6) Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "In deciding whether to dismiss a complaint for failure to state a claim, the court must treat the complaint's factual allegations—including mixed

---

[5] There is a discrepancy in Alford's description of the timing of the end-of-conciliation letter: in the complaint, Alford alleges that the EEOC issued this letter on August 20, 2013, but in her opposition, Alford states that the EEOC issued a letter advising her that conciliation had failed on May 14, 2013. (*Compare* Compl. ¶ 35-36 *with* Pl.'s Opp'n. at 4.) This Court will accept as true the timing allegation in the complaint but notes that the different date would not change the outcome.

[6] Plaintiff initiated this action on November 19, 2013, but filed the instant complaint (which is the first amended complaint) the very next day. (*See* Compl. at 1.)

5

questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and *Browning*, 292 F.3d at 242).

When res judicata bars a claim, it is subject to dismissal under Rule 12(b)(6). *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 189 (D.D.C. 2011) ("Res judicata is an affirmative defense that is usually pled in a defendant's answer, but courts have also allowed parties to assert the defense in a 12(b)(6) motion to dismiss." (citation omitted)). A defendant may raise the res judicata defense in a 12(b)(6) motion "where [it] can be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (internal quotations and citations omitted). When ruling on a motion to dismiss under Rule 12(b)(6) on res judicata grounds, a court may take judicial notice of its own record, public records from other proceedings, and documents attached as exhibits or incorporated by reference in the complaint, including administrative complaints and orders. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (taking judicial notice of documents attached to or incorporated into the complaint, including administrative complaints and documents); *Hemphill v. Kimberly-Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (taking judicial notice of public records from other proceedings (citation omitted)); *Sieverding v. U.S. Dep't of Justice*, 847 F. Supp. 2d 75, 81 (D.D.C. 2012) (taking judicial notice of a court's own records (citation omitted)).

Here, Alford did not attach any documents to her complaint, but both parties

attached documents to their briefing on the instant motion to dismiss. Providence included Alford's administrative charge of discrimination alleging an ADA violation (*see* Charge of Discrimination, Ex. A to Def.'s Mem., ECF No. 8-2), which this Court may consider as the plaintiff's administrative complaint, *see Laughlin*, 923 F. Supp. 2d at 209. Alford attached various documents generated during the EEOC's administrative review of her claims, which this Court may consider because Plaintiff specifically referenced them in the complaint. *See id.* (*See, e.g.*, Compl. ¶¶ 31-33 (letter of determination); *id.* ¶ 35 (letter of proposed conciliation); *id.* ¶ 36 (right to sue letter).) Finally, this Court may consider the facts and public records of Plaintiff's earlier case, *Alford I*. *See Hemphill*, 605 F. Supp. 2d at 186.

### B. The Doctrine of Res Judicata

Res judicata "bars relitigation of claims or issues that were or could have been litigated in a prior action." *Alaska Forest Ass'n v. Vilsack*, 883 F. Supp. 2d 136, 141 (D.D.C. 2012) (citing *Taylor v. Sturgell,* 553 U.S. 889, 892 (2008)); *see also Brown v. Mabus*, 892 F. Supp. 2d 115, 118 (D.D.C. 2012) (noting that res judicata prevents parties from "relitigating in a separate proceeding any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity, and regardless of the soundness of the earlier judgment." (alteration in original) (internal quotation marks and citations omitted)). The doctrine thus bars "parties from contesting matters that they have had a full and fair opportunity to litigate [and] protects their adversaries from the exposure and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Apotex, Inc. v. FDA*, 393 F.3d

7

210, 217 (D.C. Circ. 2004) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). However, res judicata "does not preclude claims based on facts not yet in existence at the time of the original action . . . [and] does not bar a litigant from doing in the present what he had no opportunity to do in the past." *Drake v. FAA*, 291 F.3d 59, 66-67 (D.C. Cir. 2002) (internal quotations and citations omitted). Put another way, res judicata "does not prevent parties from later bringing claims that would have been utterly impracticable to join in an earlier suit or those that could not have been anticipated when the first suit was filed." *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201 (D.D.C. 2005) (internal quotation marks and citations omitted).

"Res judicata has two distinct aspects—claim preclusion and issue preclusion (commonly known as collateral estoppel)—that apply in different circumstances and with different consequences to the litigants." *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 168 (D.D.C. 2008) (citing *NextWave Pers. Commc'ns, Inc. v. FCC*, 254 F.3d 130, 142 (D.C. Cir. 2001), and *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983)). "[C]laim preclusion forecloses all that which might have been litigated previously, while issue preclusion prevents the relitigation of any issue that was raised and decided in a prior action." *Golden v. Ficken*, 696 F. Supp. 2d 21, 32 (D.D.C. 2010) (internal quotation marks and citations omitted). Claim preclusion, which "embodies the principle that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so[,]" *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005) (internal quotation marks and citation omitted), is at issue here. In the D.C. Circuit, claim preclusion bars a subsequent lawsuit if there has been prior litigation "(1) involving the same claims or

cause of action, (2) between the same parties or their privies, and (3) there has been a final valid judgment on the merits, (4) by a court of competent jurisdiction." *Vilsack*, 883 F. Supp. 2d at 141-42 (internal quotation marks omitted) (quoting *NRDC v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008)).

With respect to whether two lawsuits involve the same "claims or cause of action," *see id.* at 141, "it is the *facts surrounding the transaction or occurrence* which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Crabbe v. Nat'l Self Serv. Storage*, 955 F. Supp. 2d 1, 4 (D.D.C. 2013) (emphasis added) (internal quotation marks omitted) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). Thus, claim preclusion bars subsequent complaints arising from the same set of facts, even if the complaints bring claims under different statutes, or different legal theories. *Vilsack,* 883 F. Supp. 2d at 142 (quoting *Kremer v. Chem. Constr. Corp*, 456 U.S. 461, 481 n.22 (1982)); *see also Mwabira-Simera v. Sodexho Marriott Mgmt. Servs.*, 786 F. Supp. 2d 395, 397 (D.D.C. 2011) ("A cause of action, for the purposes of res judicata, comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." (internal quotation marks and citation omitted)); *Polsby v. Thompson*, 201 F. Supp. 2d 45, 50-51 (D.D.C. 2002) ("[E]ven though one group of facts may give rise to different claims for relief, upon different theories of recovery, there remains a single cause of action." (citation omitted)).

To determine whether the facts of each lawsuit are similar enough to qualify as the same "cause of action," the D.C. Circuit instructs courts to use a "transactional test"

9

that looks at whether the claims arise from the same "nucleus of facts." *Apotex*, 393 F.3d at 217 (internal quotation marks and citation omitted). To make this determination, courts consider "whether the facts [from each case] are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *I.A.M Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)). Importantly, claim preclusion "does not only bar claims that were [actually] brought in a finally adjudicated suit; it also 'forecloses all that which *might have been litigated* previously.'" *U.S. ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 77-78 (D.D.C. 2011) (emphasis in original) (quoting *Nat'l Pension Fund*, 723 F.2d at 949). In practice, this means that if the plaintiff could have included, but did not include, certain facts in his initial lawsuit, he may not bring a second action stemming from those facts. *See Nat'l Pension Fund*, 723 F.2d at 949; *Folliard*, 798 F.2d at 77-78.

### III. ANALYSIS

Providence argues that res judicata bars Alford's ADA claims because she should have brought them in *Alford I*. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 8-1 at 2-6.) Alford responds that res judicata does not apply because she could not have litigated the instant claims in *Alford I*, since (1) that case was decided while the instant ADA claims were still pending before the EEOC (*see* Pl.'s Opp'n. at 7-9), and (2) this case arises, in part, from facts that were not available to the *Alford I* court (*see id.* at 3-4).

Despite Alford's protests, this Court concludes that claim preclusion bars Plaintiff's complaint in its entirety. Three of the elements of the D.C. Circuit's test for claim preclusion are easily satisfied: (1) Alford and Providence are parties to both suits, and (2) the federal district court is one of competent jurisdiction that (3) resolved *Alford I* on a grant of summary judgment, which is a final judgment on the merits. (*See* Compl. ¶¶ 2-4.) *See Alford I*, 945 F. Supp. 2d at 104-11.[7] Thus, the only element at issue is whether the claims in *Alford I* and the instant matter involve the same cause of action.

Applying the D.C. Circuit's "transactional test" to the case at bar, *see Apotex*, 393 F.3d at 217, it is clear beyond cavil that the FMLA and DCFMLA claims that Plaintiff litigated in *Alford I* and the ADA claims alleged here constitute the same "cause of action." Both sets of claims turn on the same series of events that the *Alford I* court already considered in reaching its conclusion that Plaintiff's termination was

---

[7] In her opposition, Plaintiff contends that the decision in *Alford I* was neither "final" nor "on the merits," but this Court finds neither of these arguments persuasive. With respect to finality, Plaintiff contends that *Alford I* was not final when she filed the instant complaint because it was wrongly decided and still pending appeal in the D.C. Circuit. (*See* Pl.'s Opp'n at 2-3) But a judgment's accuracy has no bearing on the application of claim preclusion, *see City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1869 (2013), and in any event, the D.C. Circuit recently upheld the *Alford I* decision on appeal. *Alford v. Providence*, No. 13-7096, 2014 WL 3013741, at *1 (D.C. Cir. June 20, 2014) (per curiam). Second, Alford argues that the grant of summary judgment in *Alford I* was not "on the merits" as claim preclusion requires, *see Pailes v. U.S. Peace Corps*, 783 F. Supp. 2d 1, 6 (D.D.C. 2009), because the court based its opinion, in part, on credibility determinations. (*See* Pl.'s Opp'n at 4 ("It appears . . . that the lower court rendered its decision on credibility issues as opposed to the merits.").) While the *Alford I* court granted summary judgment in part based on its finding that Plaintiff's testimony was not credible because she had contradicted herself in recounting the events surrounding her termination, *see Alford*, 945 F. Supp. 2d at 107, the fact that the court mentioned credibility is of no consequence, as it is well established that summary judgment—whatever its basis—constitutes a final judgment *on the merits* for the purposes of claim preclusion. *Prakash v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984); *Lans v. Adduci Mastriani & Shaumberg L.L.P.*, 786 F. Supp. 2d 240, 303 (D.D.C. 2011); *see, e.g., Lindsey v. District of Columbia*, 609 F. Supp. 2d 71, 77 (D.D.C. 2009) ("[The D.C. District Court] granted summary judgment in the defendants' favor. That ruling is binding on the plaintiff under the doctrine of res judicata." (internal citation omitted)). While Alford cites *Vorhees v. Time Warner Cable*, 109 F. Supp. 2d 384, 387 (E.D. Pa. 2000), for the proposition that a decision on summary judgment does not trigger res judicata dismissal of a later action, *Vorhees* clearly limited its holding to cases where the plaintiff took affirmative steps to avoid claim preclusion by seeking to consolidate her claims. *Id.*

11

lawful: (1) Alford's workplace injury of April 2, 2010; (2) Defendant's allegedly unlawful conduct between December 2010 and January 2011; and (3) Alford's termination effective January 7, 2011. *See Alford I*, 945 F. Supp. 2d at 101. In fact, in the instant complaint Plaintiff repeats—sometimes verbatim—many of the factual allegations in the *Alford I* complaint. (*Compare* Compl. ¶¶ 6-10, 16-29 *with Alford I* Compl. ¶¶ 11, 14, 16-17, 20-32.)

What is more, the court in *Alford I* touched on the very issues at the heart of the instant matter—*to wit*, the weight-lifting restrictions doctors had imposed and whether Plaintiff could get to work and perform her job. *See Alford I*, 945 F. Supp. 2d at 108 (finding that "because she could not lift her wheelchair, Ms. Alford could not transport herself and could not come to work [and] . . . stopped going to work"; therefore, "[t]he Hospital had a legitimate, nondiscriminatory reason for terminating [ ] Alford[.]"). Although some of the facts on which the claims rely differ slightly—*e.g.*, *Alford I* largely depended on the number of days Plaintiff took off from work, while the instant claims turn more on whether there were any accommodations that would have allowed Alford to perform her job—other circuits have found that claim preclusion bars ADA claims arising from the same core set facts that were litigated or could have been litigated in prior FMLA lawsuits. *See, e.g.*, *Hodges v. Publix Super Mkts., Inc.*, 372 F. App'x 74, 76-78 (11th Cir. 2010); *Howard v. Inova Health Care Serv.*, 302 F. App'x 166, 182 (4th Cir. 2008); *Churchill v. Star Enters.*, 183 F.3d 184, 190-91 (3rd Cir. 1999). In short, Alford cannot recycle the same set of facts pertaining to her termination and present them clothed in a different legal theory. Because the facts of the two cases at issue here are nearly identical in "time, space, origin, [and]

motivation," and certainly would have "form[ed] a convenient trial unit[,]" *Apotex*, 393 F.3d at 217, they constitute the same "cause of action" for the purposes of claim preclusion.

Plaintiff nonetheless insists that this case presents a different "cause of action" because it involves some new facts that were not included in *Alford I*. She offers two sets of facts that she contends are unique to the instant complaint: factual allegations about her ability to disassemble her wheelchair into smaller, more lightweight pieces so that she could actually get to work (*see* Pl.'s Opp'n at 2-3); and the administrative proceedings pertaining to her ADA claims, in particular the EEOC's determination that there was reasonable cause to believe that Providence had discriminated against Alford on the basis of her disability (*id.* at 4-5; *see also* Letter of Determination at 3). Certainly, the facts pertaining to Alford's ability to disassemble her wheelchair were available to her during *Alford I*, so Plaintiff could have used those facts to litigate her ADA claims at that time. *See Nat'l Pension Fund*, 723 F.2d at 949; *Folliard*, 798 F. Supp. 2d at 77-78. The EEOC's Letter of Determination likewise fails to stave off the preclusive effect of res judicata for two reasons. First, the EEOC issued the letter while *Alford I* was still pending; thus, Plaintiff could have raised it in the prior litigation. (*See* Pl.'s Opp'n at 3 (record citation omitted).) Moreover, even if Plaintiff did not learn about the Letter of Determination until after *Alford I* was resolved, the letter itself is of little consequence to proving a case of disability discrimination, since it is the facts of Providence's alleged discrimination—not the EEOC's view of the evidence— that gives rise to Alford's ADA claim. *See Hodge v. United Airlines*, 821 F. Supp. 2d 180, 197 (D.D.C. 2011). Thus, the instant complaint does not allege new facts that

could not have been raised during *Alford I*, so the two cases present the same "cause of action." *See Nat'l Pension Fund*, 723 F.2d at 949; *Folliard*, 798 F. Supp. 2d at 77-78.

Plaintiff's next contention—that the ADA's mandatory exhaustion requirements provide an escape hatch from claim preclusion on the grounds that she could not have brought her ADA claims in *Alford I* because those claims were still winding their way through the EEOC administrative process—fares no better. (*See* Pl.'s Opp'n at 7-11.) *Cf. Nat'l Pension Fund*, 723 F.2d at 949 (noting that claim preclusion only applies to claims that "might have been litigated" in the prior action); *Folliard*, 798 F. Supp. 2d at 77-78 (same). To be sure, ADA claims are subject to certain administrative exhaustion requirements that do not apply to the claims in *Alford I*. In particular, Plaintiffs may not file ADA claims in federal court without first receiving a right-to-sue notice from the EEOC. *See Dahlman v. AARP*, 791 F. Supp. 2d 68, 74-75 (D.D.C. 2011); *see also* 42 U.S.C. § 12117. And the EEOC must issue a right-to-sue notice upon the plaintiff's request at any time after 180 days from filing of the administrative complaint or after determining its inability to bring a civil charge. *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 186 (internal citations omitted); *see also* 29 C.F.R. § 1601.28(a)(1). Unlike the ADA, the FMLA and DCFMLA have no exhaustion requirements, which means that a plaintiff's claims under these statutes are ripe for adjudication immediately upon the adverse employment action. *See Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008) (no administrative exhaustion under the FMLA); *Jackson v. Wilkes Artis*, 565 F. Supp. 2d 148, 152 n.4 (D.D.C. 2008) (same under the DCFMLA). Accordingly, Alford chose to proceed straight to court on her FMLA and DCFMLA claims, and she now contends that claim preclusion would

unfairly punish her for not bringing her ADA claims before the EEOC determined that conciliation with Defendant was no longer possible; in other words, although she could have litigated all of her claims together in *Alford I*—a point Plaintiff appears to concede (*see* Pl.'s Opp'n at 3 n.2 (noting that Alford could have requested a right-to-sue letter in January 2012))—she should not be required to do so given the administrative exhaustion requirements and the fact that she did not actually receive a right-to-sue letter from the EEOC until August 20, 2013. (*See* Compl. ¶ 36.)

The facts alleged in the complaint and existing law belie Plaintiff's argument, for they make clear that Alford did not have to stand by idly awaiting a right-to-sue notice from the EEOC. A plaintiff in Alford's position who has certain claims that might be presented in federal court while parallel claims arising out of the same cause of action are making their way through the EEOC's administrative review channels at the same time has three options: (1) file the EEOC complaint, await its outcome, and then file all the claims simultaneously in the same complaint in district court; (2) file one administrative complaint and one complaint in federal court, then seek to stay the latter pending the outcome of the former; or (3) file both the EEOC complaint and the federal district court complaint, request a right-to-sue notice after 180 days, *see* 42 U.S.C. § 2000e-5(f)(1), then seek to amend the federal complaint to include the additional claims. *See Robinson v. District of Columbia,* No. 99-1694, 2000 U.S. Dist. LEXIS 14476, at *12 (D.D.C. Sept. 30, 2000) (holding that res judicata barred the plaintiff's claims because he had the latter two options available to him (citations omitted)); *see also Howard*, 302 F. App'x at 182 (noting that the plaintiff could have gone through the administrative process before filing any in-court complaint). Alford chose none of

these alternatives, and she cannot now be heard to complain that it is somehow unfair to conclude that she missed her opportunity to bring the claims that worked their way through the EEOC process into federal court.

A court in this district addressed this scenario in *Robinson v. District of Columbia*, No. 99-1694, 2000 U.S. Dist. LEXIS 14476 (D.D.C. Sept. 30, 2000). In that case, the plaintiff filed a complaint with the EEOC alleging that his employer, the District of Columbia Metropolitan Police Department ("MPD"), had discriminated against him on the basis of his race, color, and personal appearance under Title VII by ordering him to cut his hair. *Id.* at *2. While that complaint was pending before the EEOC, the plaintiff filed suit against the MPD in federal court, alleging violations of various statutory and constitutional rights. *Id.* at *3 (citation omitted).[8] As here, while the federal case proceeded through litigation, the EEOC issued a Letter of Determination finding probable cause to believe that the MPD had discriminated against the plaintiff. *Id.* at *4. After the 180-day window had passed, instead of requesting a right-to-sue letter, the plaintiff waited to see if the EEOC would file a civil action on his behalf. *Id.* at *3-5. Meanwhile, the plaintiff's first case ended in a judgment for the defendant. *Id.*[9] The EEOC issued a right-to-sue letter three weeks later. *Id.* at *5. The *Robinson* court concluded that res judicata barred the plaintiff's second action because he could have either sought a stay of his first case pending the outcome of the

---

[8] Specifically, the complaint in the first-filed action in *Robinson* alleged race discrimination under 42 U.S.C. § 1981, civil rights deprivation under 42 U.S.C. § 1985, and violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb. *See Robinson*, 2000 U.S. Dist. LEXIS 14476, at *3.

[9] In the *Robinson* plaintiff's first action, the court granted summary judgment to the defendant on several of the claims, while a jury reached verdict in favor of the District on the others. *See Robinson*, 2000 U.S. Dist. LEXIS 14476, at *4-5.

16

administrative process or requested his right-to-sue notice after 180 days had passed and amended his federal-court complaint accordingly. *Id*. at *12-14.

So it is here. After her termination, Alford could have filed *Alford I*, requested a stay pending the outcome of the EEOC process, and amended her *Alford I* complaint at a later date; or, had Alford preferred to litigate sooner and chosen to forego the benefits of the EEOC process, she could have requested a right-to-sue notice in January of 2012, while *Alford I* was still in discovery, and sought to amend the district court complaint to add the ADA claim. (*See* Pl.'s Opp'n. at 3 n.2.) *See Robinson*, 2000 U.S. Dist. LEXIS 14476, at *3-5. Alternatively, Alford could have kept her litigation powder dry, awaiting completion of the EEOC process, and then filed all of the claims in the same complaint in federal district court. *See Howard*, 302 F. App'x at 182. Given the options at her disposal and the availability of the necessary facts, Alford certainly could have sought to consolidate all of her legal claims in a single action, and it was her responsibility to do so to avoid preclusion. *See Churchill*, 183 F. 3d at 191 (noting that plaintiffs "should organize litigation that they are pursuing to avoid claim preclusion"). In other words, like the plaintiff in *Robinson*, Alford "did not have to sit on [her] rights[,]" and having chosen to do so, she "cannot now escape the consequences." *Robinson*, 2000 U.S. Dist. LEXIS 14476 at *13.

Undaunted, Alford makes a final attempt to distinguish her case from *Robinson* on the grounds that she was not simply awaiting an EEOC determination, but rather had chosen to participate in EEOC proceedings aimed at conciliation. (*See* Pl.'s Opp'n at 7.) In the Court's view, this fact makes matters worse for Alford, not better, because it means that she was actively engaged in settlement negotiations about claims that were

17

simultaneously being litigated in federal court. Perhaps Alford reasoned that this "race to the finish" approach to final judgment would benefit her bottom line because she could get an offer from Defendants in the negotiations process and compare that sum to the amount that a jury might be willing to award. But the litigation process is not to be used as a hedge against the possibility of a less-than-satisfactory outcome at the bargaining table. And, in any event, because conciliation is not a *mandatory* procedure from the standpoint of exhaustion of remedies, Alford still retained the option (which she should have exercised) to request a right-to-sue notice in order to bring her ADA claims into the ongoing litigation in federal court. *Cf. Hill v. Metro. WMATA*, 231 F. Supp. 2d 286, 292-94 (D.D.C. 2002) (noting that, regardless of the status of the EEOC's investigation, a plaintiff may request a right-to-sue notice and file a civil suit so long as 180 days have passed). Although Alford tries to characterize the procedural course of this case as one in which she chose the "legislatively and judicially favored method of relying on administrative processes" over resorting to litigation in court (*see* Pl.'s Opp'n. at 8 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 368, 373(1977))), the truth of the matter is that, whether motivated by greed, risk-aversion, or something else, she opted to sit on the sidelines and allow *Alford I* to proceed all the way to summary judgment instead of proactively taking control of her claims.

In the final analysis, it also important to note that Alford is not the only party with interests at stake in these cases; rather, Providence, as the defendant in both lawsuits, has a right of protection from "repetitious litigation involving the same causes of action[.]" *Jenson v. Huerta*, 828 F. Supp. 2d 174, 179 (D.D.C. 2011). There was little reason for Alford to believe that Providence would cooperate in the EEOC

18

conciliation process while defending itself in a parallel federal lawsuit based on the same exact facts. *Cf. Occidental Life Ins. Co.*, 432 U.S. at 368. Even so, nothing in the text of the ADA or the FMLA suggests that conciliation provides an exception to claim preclusion, *see Churchill*, 183 F.3d at 192-94, and, indeed, allowing such a rule could encourage plaintiffs to manipulate the EEOC process simply to bring two separate suits against their employers. Just as in *Robinson*, Alford is not spared from res judicata merely because she allowed her ADA claims to meander through the administrative process. Alford took no steps to preserve her claims, and the facts presented compel only one result: claim preclusion bars the instant complaint in its entirety.

## IV. CONCLUSION

For the reasons set forth above, this Court concludes that claim preclusion bars Alford's claims. Accordingly, the Court **GRANTS** Defendant's motion to dismiss.


DATE: July 25, 2014                *Ketanji Brown Jackson*
                                   KETANJI BROWN JACKSON
                                   United States District Judge